24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.                                                    DIVISION " "

NANCY ANDERSON; JOY MANGUNO; JAYME SONGY, AS CURATOR FOR
MALVINA SONGY; AND JANICE VERDIN, AS REPRESENTATIVE OF
CATHERINE ROUSSELL, INDIVIDUALLY AND ON BEHALF OF OTHERS
SIMILARLY SITUATED

VERSUS

BOB DEAN, JR.; UPTOWN HEALTHCARE CENTER, L.L.C.; PARK PLACE
HEALTHCARE, LLC; RACELAND MANOR NURSING HOME, INC.; MAISON
DE'VILLE NURSING HOME, INC.; RIVER PALMS NURSING & REHAB, LLC;
MAISON DE'VILLE NURSING HOME OF HARVEY, L.L.C.; ST. ELIZABETH'S
CARING, L.L.C.; and BOB DEAN ENTERPRISES, INC.

FILED:_____          _____
                                         DEPUTY CLERK

PETITION FOR CLASS ACTION, INJUNCTIVE
RELIEF, AND DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiffs, Nancy Anderson,

on behalf of her mother-in-law, Mrs. Leona Anderson; Joy Manguno, on behalf of her husband,

Joseph T. Manguno; Jayme Songy, as curator for Malvina Songy; and Janice Verdin, as responsible

party for Catherine Roussell ("Plaintiffs") who bring this lawsuit, individually and as

representatives of all those similarly situated, and represent as follows:

PARTIES

1.

Named as Plaintiffs and/or Proposed Representatives of the Plaintiff Class ("Petitioners")

are:

A. Nancy Anderson is a person of the full age of majority domiciled in Jefferson Parish and

appears on behalf of her mother-in-law, Mrs. Leona Hebert Anderson, who was a

resident at defendant Park Place Healthcare, LLC ("Park Place") in Gretna,

Louisiana.  Nancy Anderson has power of attorney to act as attorney in fact for her

1

EXHIBIT B

mother-in-law and asserts rights as Leona Hebert Anderson's sponsor for the purposes of the Louisiana Nursing Home Residents Bill of Rights Act.

B.  Joy Manguno is a person of full age of majority domiciled in Jefferson Parish and appears on behalf of her husband, Joseph T. Manguno, a resident of Park Place in Gretna, Louisiana, and asserts rights as his sponsor for the purposes of the Louisiana Nursing Home Residents Bill of Rights Act.

C.  Jayme Songy is a person of the full age of majority domiciled in Terrebonne Parish and is the nephew and court appointed curator for Malvina Songy, a 93-year-old resident of South Lafourche Nursing & Rehab and asserts rights as her sponsor for the purposes of the Louisiana Nursing Home Residents Bill of Rights Act.

D.  Janice Verdin, a person of the full age of majority domiciled in Lafourche Parish and the niece of Catherine Roussell, a 67-year-old resident of South Lafourche Nursing & Rehab.  Verdin is the designated "responsible person" for Catherine Roussell, and asserts rights as her sponsor for the purposes of the Louisiana Nursing Home Residents Bill of Rights.  To the extent it is determined that Catherine Roussell lacks legal capacity, Ms. Verdin will be seeking judicial appointment as curator of Ms. Roussell as soon as the 17th Judicial District Court for Parish of Lafourche resumes operations.

2.

The following parties are made Defendants herein:

A.  **Bob Dean, Jr.,** a natural person who resided in East Baton Rouge Parish at the time Plaintiffs' causes of action accrued.

B.  **Uptown Healthcare Center, L.L.C (operating under the tradename of Maison Orleans Healthcare of New Orleans)** a Louisiana limited liability company with its principal place of business located at 1420 General Taylor St., New Orleans, LA 70115.

C.  **Park Place Healthcare, LLC,** a Louisiana limited liability company with its principal place of business located at 535 Commerce St., Gretna, LA 70056.

D. **Raceland Manor Nursing Home, Inc. (operating under the tradename of South Lafourche Nursing & Rehab)**, a Louisiana corporation with its principal place of business located at 146 E. 28th St., Cut Off, LA 70345.

E. **Maison De'ville Nursing Home, Inc. (operating under the tradename of Maison De'ville Nursing Home)**, a Louisiana corporation with its principal place of business located at 107 South Hollywood Dr., Houma, LA 70360.

F. **River Palms Nursing & Rehab, LLC**, a Louisiana limited liability company with its principal place of business located at 5301 Tullis Dr., New Orleans, LA 70131.

G. **Maison De'ville Nursing Home of Harvey, L.L.C. (operating under the tradename of Maison De'ville Nursing Home of Harvey)**, a Louisiana limited liability company, with its principal place of business located at 2233 Eighth St., Harvey LA 70058.

H. **St. Elizabeth's Caring, L.L.C. (operating under the tradename of West Jefferson Health Care Center)**, a Louisiana limited liability company with its principal place of business located at 1020 Manhattan Blvd. Harvey, LA 70058.

I. **Bob Dean Enterprises, Inc.,** a Louisiana corporation with its principal place of business at 343 Third St., Suite 600, Baton Rouge, LA 70801. (Bob Dean, Jr. is referenced herein as "Defendant Dean" and the seven nursing homes are collectively referenced herein as "Bob Dean, Jr. Nursing Homes")

## **JURISDICTION AND VENUE**

3.

The amount in controversy in this case and the subject matter upon which it is based are sufficient to justify jurisdiction in this Court pursuant to Louisiana Code of Civil Procedure Article 2.

4.

Venue is proper in this Court pursuant to Louisiana Code of Civil Procedure Articles 42, 43, and 74 as the wrongful conduct occurred, and damages were sustained in this Parish. Upon

information and belief all residents of Bob Dean, Jr. Nursing homes are citizens of the State of Louisiana and therefore are not of diverse citizenship.

## **BACKGROUND**

5.

This is a class action for injunctive relief and damages on behalf of residents of nursing homes evacuated in the wake of Hurricane Ida to a warehouse in Independence, Louisiana, where they endured horrific and inhumane conditions due to the actions and negligence of Defendants. This action seeks redress in the form of injunctive relief under the Louisiana Nursing Home Resident Bill of Rights Act ("NHRBRA") and for damages arising from the general tort laws of Louisiana.

6.

Specifically, the claims herein are separate and distinct from any claim that any plaintiff, putative class representatives, and putative class members have against the Defendants for medical malpractice arising from Louisiana Revised Statute §40:1231.1 et. seq.  For the avoidance of any doubt, no party to this petition is individually asserting, nor are any putative class claims being asserted, for malpractice under Louisiana Revised Statute §40:1231.1 et. seq. Further, no party is asserting any claims in this petition that arise under any federal law or statute.

7.

Catherine Roussell, Malvina Songy, Joseph Manguno, and Mrs. Leona Hebert Anderson, represented herein by Plaintiffs, were among the at least 843 nursing home residents sent to a warehouse in Independence, Louisiana known as Waterbury Companies or the "Waterbury Building" before Hurricane Ida to ride out the storm.

8.

The Waterbury Building is believed to have a municipal address of 129 Calhoun St, Independence, LA 70443. The Waterbury Building was ill equipped to house anywhere near 843 nursing home residents, many of whom suffered from profound disabilities, both physical and

mental. The whole population of such residents was and remains at risk of death or great bodily harm.

9.

The 843 residents came from seven nursing homes, all of which have ultimate common ownership by Bob Dean, Jr. Additionally, Defendant Dean was at all relevant times herein the ultimate owner of the Waterbury Building into which Defendant Dean directed the Bob Dean, Jr. Nursing Homes to evacuate residents. The employees of the Bob Dean, Jr. Nursing Homes were at all relevant times herein ultimately under the control, direction, and discretion of Defendant Dean and/or Defendant Bob Dean Enterprises, Inc. Upon information and belief, Defendant Dean controlled and directed the activities of the evacuation, location to which evacuation would occur, notification to state authorities regarding the evacuation, authority for supplies and staffing at the evacuation site, access to and refusal to permit access to the evacuation facility, and numerous other aspects central to this case, that will be developed during discovery and shown at trial.

10.

Upon information and belief, this action of evacuating the residents to the Waterbury Building was not done pursuant to any established hurricane evacuation plan put into place at any of the Bob Dean, Jr. Nursing Homes, and in fact conflicted with the written policies and procedures that were in place, as well as with relevant Louisiana laws.

11.

From the outset, Defendants intentionally misrepresented the actual evacuation plan, choosing not to inform family members of the planned evacuation or tell them where the residents were being taken. Families who went to extreme lengths and great effort were finally able to speak with a representative of Defendant Dean or a representative of one of the Bob Dean, Jr. Nursing Homes, and were told that their loved one would be moved to an allegedly hurricane-proof building in Tangipahoa Parish with suitable accommodations for the resident population and all needed medical supplies available.

12.

Defendants notified Tangipahoa Parish officials that the Waterbury Building was designed to hold between 200 to 400 people and informed the officials that approximately 300 patients would be evacuated there. In fact, the building is an industrial warehouse that lacks the capacity to safely house 200 to 400 residents, especially considering the required COVID-19 protocols.

13.

The statements regarding evacuation plans, destination, and suitability of the evacuation facility made by agents, employees, or representatives of Defendants were made with the lack of due care and diligence which even careless persons are accustomed to exercise.

14.

At least 843 residents from the Bob Dean, Jr. Nursing Homes were relocated to the Waterbury Building. To prepare the Waterbury Building to house the large number of residents, Defendants, specifically Defendant Dean and representatives of Bob Dean, Jr. Enterprises, Inc., directed staff to set up cots without any regard whatsoever for the social distancing measures of the required COVID-19 protocols. A large number of mattresses were placed on the floor, toe to toe and side by side, with little to no space between them.



15.

No reasonable steps or measures were taken or accomplished by Defendants to prepare the Waterbury Building with sufficient resources or accommodations for the residents in a way that offered residents any semblance of privacy or accounted for residents' basic personal hygiene needs and basic human dignity. There were only four sinks and ten to twelve showers available to the 843 residents, plus staff.  The only bathrooms were a small number of port-a-lets, which were placed in the same location as the "feeding area" for residents.

16.

Bob Dean, Jr. Nursing Home residents began to arrive at the Waterbury Building on Friday, August 27, 2021.

17.

There were several staff members of the various Bob Dean, Jr. Nursing Homes who relocated to the Waterbury Building at Defendant Dean's ultimate direction, along with "corporate nurses" and other "corporate" employees and others acting on behalf of Defendant Dean and Bob Dean, Jr. Enterprises, though the total number of nurses, certified nursing assistants, dieticians and other necessary skilled workers was woefully deficient to care for the at least 843 residents crammed into the facility.

18.

As residents began to arrive, it was immediately clear there was insufficient space and beds for the large and excessive number of residents that Defendants chose to evacuate to the Waterbury Building. This fact would have been clear to any reasonable person exercising the most minimal degree of care or planning, prior to the evacuation. As a result, some residents were forced to sleep in their wheelchairs or other chairs they could find. Still other residents were forced to sleep on, or at least lie down on, the concrete floors. Incredibly, persons holding the title of "corporate nurse" reserved two and three mattresses each for themselves to ensure their own personal comfort.

19.

Very quickly, the temperatures rose due to a lack of air conditioning and ventilation.  The odors, vapors and fumes emanating from the port-a-lets became putrid, to the point that staff members and residents alike would uncontrollably vomit and heave when sensing the odors, noxious vapors, and fumes off-gassing in the area.

20.

Contrary to the assertions by Defendants and its representatives, the Waterbury Building was not "hurricane proof". As Hurricane Ida hit, rainwater began coming into the warehouse. Nurses attempted to contain the water but to no avail.

21.

Due to the water intrusion, a number of residents were on mattresses that began to float in the water. As a result, approximately 100 residents were required to be relocated to other areas within the facility, exacerbating the already overcrowded conditions.  The residents and staff were terrified, particularly given the completely helpless nature of many of the residents and the powerless condition of the staff members, due to the woefully insufficient facilities, careless and reckless lack of planning and severe overcrowding of the already deficient facilities.

22.

After the hurricane hit the facility, the generators failed and the already insufficient air conditioning system quit running, making it even more unbearable. Trash began to pile up.

 

23.

The excessive heat caused by the increasing temperature, lack of proper insulation in the building, and failed air conditioning system, coupled with the lack of sufficient water and food supply caused many residents to suffer dehydration.

24.

Residents unsuccessfully called out to the representatives of Defendants for food, water, medicine, and to be relieved of their soiled diapers, clothes, and bed linens (for those who were provided linens) but their calls went unanswered.

25.

Many residents spent as many as six (6) days in the fetid warehouse with overflowing toilets and piled-up trash.

26.

At least seven (7) of the nursing home residents have died. At least fourteen (14) more residents were hospitalized for their injuries and severe degradation of the medical conditions. Unfortunately, it is likely that additional deaths and hospitalizations of residents will occur as a direct and proximate result of the fault of Defendants.

27.

Defendants failed to inform Louisiana Department of Health ("LDH") officials of the deteriorating conditions at the site or the need for immediate assistance.

28.

LDH officials ultimately received reports from caregivers at the scene of people lying on mattresses on the floor, not being fed or changed and not being socially distanced to prevent the spread of the coronavirus.

29.

On Tuesday, August 31, 2021, representatives of LDH arrived to investigate the warehouse.

30.

Upon information and belief, Defendant Dean personally demanded that the LDH representatives leave immediately and refused to allow them and other State of Louisiana authorities to enter the warehouse.  Specifically, Defendant Dean personally refused to permit State inspectors to enter his facility and demanded that they get off his property.

31.

By Wednesday, September 1, 2021, accompanied by Louisiana State Police, LDH officials finally came to rescue the abused residents, and shut down the warehouse.  Residents were transited by State officials, and persons acting on behalf of the State, and the resident population from the Bob Dean, Jr. Nursing Homes were disbursed to various nursing homes across Louisiana, a process which continued into Thursday, September 2, 2021. Incredibly, the responsible parties for the residents were not properly notified by the Bob Dean, Jr. Nursing Homes, Defendants, or others acting on their behalf, of the circumstances of the evacuation or the whereabouts of their loved ones.  Instead, persons seeking information about residents of Bob Dean, Jr. Nursing Homes have been forced to rely largely on media reports, social media and indirect information.

32.

As of this filing, Jayme Songy has not been given an accurate location for the whereabouts of Malvina Songy, despite his best efforts. Many similarly situated persons have not been notified of the whereabouts of their resident, and as of this filling do not know where their loved ones are located or the condition and status of their loved one.

<u>CLASS ACTION ALLEGATIONS</u>

33.

Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

34.

Petitioners propose bringing this matter as a class action against Defendants on the issue of injunctive relief, liability, and damages.

35.

Petitioners propose to proceed on behalf of the following class of individuals:

All Bob Dean, Jr. Nursing Homes residents (and any legal representatives thereof)
who were evacuated to the Waterbury Companies warehouse in Independence,
Louisiana as a result of Hurricane Ida.

36.

Plaintiffs reserve the right, with leave of Court if required, to amend the Class definition if

further investigation and discovery indicates that the Class definition should be narrowed,

expanded, or otherwise modified. Excluded from the Class of Plaintiffs are governmental entities;

the Defendants; any entity in which Defendants have a controlling interest; Bob Dean, Jr.

Enterprises or parent companies or entities, top level management of the Bob Dean, Jr. Nursing

Homes, including the Administrators and Directors of Nursing and similar managerial level

employees of the Bob Dean, Jr. Nursing Homes, affiliates, legal representatives, co-conspirators,

successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial

officer presiding over this matter and the members of their immediate families and judicial staff.

The following are specifically not excluded:   Bob Dean, Jr. Nursing Homes employees who were

not the Directors of Nursing or similar top-level managers.

37.

Petitioners and all those similarly situated are entitled to have this cause of action

maintained as a class action pursuant to La. C.C.P. art. 591.

38.

Defendants' acts and omissions were applied uniformly to all members of the Class, so that

the questions of law and fact are common to all members of the Class and any subclasses the Court

might find to be appropriate.

39.

All members of the Class and any subclasses were and are similarly affected by the

Defendants' acts and omissions, and the relief sought herein is for the benefit of Plaintiffs and

members of the Class and any subclasses.

40.

Based on the number of residents evacuated, which is at least 843, it is apparent that the number of plaintiffs in both the Class and any subclass(es) is so large as to make joinder impractical, if not impossible.

41.

Questions of law and fact common to the Plaintiff Class and any subclasses exist that predominate over questions affecting only individual members, including, inter alia:

a.  Whether the Defendants, or any of them, have engaged in conduct prohibited by applicable law, including, but not limited to the Louisiana Nursing Home Residents Bill of Rights Act, ("NHRBRA"), LSA-R.S. 40:2010.8, et seq and Louisiana Civil Code Article 2315;

b.  Whether the Defendants breached their fiduciary duty of care to plaintiffs and similarly situated plaintiffs;

c.  If the Court determines the Defendants, or any of them, have in fact engaged in violations of the applicable law, whether an injunction should be issued ordering those Defendants to cease and desist any and all actions or behaviors in furtherance of the violations;

d.  Whether Defendants disclosed or concealed essential descriptions of the evacuated premises; and,

e.  Whether Defendants should be enjoined from further operations.

42.

The claims asserted by Plaintiffs in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class and any subclasses is common to the members of each.

43.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclasses.

44.

Class representatives will be formally designated consistent with scheduling orders handed down by the Court.

45.

Plaintiffs have retained counsel who are competent and experienced in class action litigation.

46.

Certification of this matter as a class action is appropriate under Louisiana Code of Civil Procedure Article 591 because the questions of law or fact common to the respective members of the Class and any subclasses predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

47.

Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits.

48.

This action is properly maintainable as a class action under Art. 591(B)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants. Additionally, this action is properly maintainable as a class action under Art. 591(B)(1) because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications.

49.

This action is properly maintainable as a class action under Art. 591(B)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

50.

Alternatively, this action is properly maintainable as a class action under Art. 591(B)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context the asserted claims herein, individual Plaintiffs lack the financial resources to vigorously prosecute separate lawsuits against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There does not appear to be any difficulties in managing this class action.

51.

A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

52.

The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

**CAUSES OF ACTION**

**VIOLATION OF THE LOUISIANA NURSING
HOME RESIDENTS BILL OF RIGHTS ACT**

53.

Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Petition.

54.

The actions and inactions of Defendants set out above deprived Plaintiff class of their dignity, and constitute breaches and violations of the Plaintiff class's rights under the Louisiana Nursing Home Residents Bill of Rights Act, ("NHRBRA"), LSA-R.S. 40:2010.8, *et seq.*

55.

These violated rights include, but are not limited to, the right to receive adequate and appropriate protective and support services; the right to have privacy and confidentiality in caring for personal needs; the right to be treated courteously, fairly, and with the fullest measure of dignity; the right to be free from mental and physical abuse; the right to be free from any undue restraint, and the right to have significant changes in health status immediately reported to interested family members.

56.

As a result of these breaches and violations, the Plaintiff Class is entitled to recover all relief under the NHRBRA, including but not limited to injunctive relief preventing Defendants from further violating NHRBRA, attorneys fees and costs pursuant to LSA-R.S. 40:2010.9.

57.

Pursuant to LSA-R.S. 40:2010.9, Plaintiffs have a cause of action for injunctive relief against Defendants as a result of these breaches and violations. Plaintiffs will move for a temporary restraining order and seek preliminary injunctive relief pursuant to the Louisiana Code of Civil Procedure.

58.

Plaintiff Class seeks to enjoin Defendants from owning or operating a nursing home in the future and enjoining the Defendants from preventing the families and responsible parties of residents of the Bob Dean, Jr. Nursing Homes from knowing the location of the residents and communicating with the residents.

## VIOLATION OF LOUISIANA'S GENERAL TORT LAWS

59.

Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

60.

The actions of Defendants set out above constitute an extreme departure from ordinary care and willful, wanton, or reckless disregard for the rights of others, entitling the Plaintiff Class to all damages and remedies under Louisiana's general tort law.

61.

Defendants Emergency Plan failed to comply with the standards imposed by the State including but not limited to the fact that a warehouse is not an acceptable host site for a catastrophic emergency.

62.

Other acts of fault, breach of custodial duty, negligence, gross negligence and willful misconduct that are developed during discovery and further investigation, and which are in violation of the standard of care for a custodian of persons similarly situated to Plaintiffs and similarly situated persons, including but not limited to, failing to provide adequate food and hydration, basic human needs, appropriate privacy, proper custodial care, cleaning and protection from further harm, all of which shall be shown at the trial of this cause.

## STATEMENT OF NOTICE

### 63.

Plaintiffs have notified the relevant authorities and personnel with the State of Louisiana of Plaintiffs' intent to file this Petition and of the claims contained herein, and have invited the State of Louisiana to formally intervene in these proceedings should it deem it necessary.

## REQUEST FOR A PROTECTIVE ORDER

### 64.

Plaintiffs seek a protective order that Defendants, all of their agents, assigns, and/or attorneys, or other persons acting or claiming to act on their behalf, be and are hereby temporarily restrained, enjoined, and prohibited from disposing of any records, documents, communications, including text messages and emails, and any other evidence related to the evacuation or the evacuation plan, or property of the Plaintiff Class in Defendants' actual or constructive possession and/or present at a nursing home.

## JURY DEMAND

### 65.

Plaintiffs demand trial by jury on all issues subject to trial by a trier of fact.

## PRAYER

WHEREFORE Plaintiffs, individually for Catherine Roussell and Malvina Songy, Joy Manguno, Mrs. Nancy Anderson, and on behalf of all others similarly situated, pray for relief pursuant to each cause of action set forth in this Complaint as follows:

a. For an order certifying that the action may be maintained as a class action, certifying the individuals formally designated (consistent with scheduling orders handed down by the Court) as representative of the Class, and designating their counsel as counsel for the Class;

b. For an order of injunctive relief as follows:

    (1) Enjoining Defendants from further violations of Plaintiffs' rights under the NHRBRA, including:

        a.  The right to receive adequate and appropriate protective and support services;

        b.  The right to have privacy and confidentiality in caring for personal needs;

        c.  The right to be treated courteously, fairly, and with the fullest measure of dignity;

        d.  The right to be free from mental and physical abuse;

        e.  The right to be free from any undue restraint; and

        f.  The right to have significant changes in health status immediately reported to interested family members.

    (2) Enjoining Defendants from owning or operating a nursing home in the future;

    (3) Enjoining Defendants from preventing the disclosure of information related to the location of the nursing home residents;

    (4) Allowing Plaintiffs access to the entire list of nursing home residents who were relocated and allowing Plaintiffs, through counsel, to informally communicate with these residents;

c.  For a protective order that Defendants, all of their agents, assigns, and/or attorneys, or other persons acting or claiming to act on their behalf, be and are hereby temporarily restrained, enjoined and prohibited from disposing of any records, evidence related to the evacuation or the evacuation plan, or property of the Plaintiff Class in their possession.

d.  For an award of all appropriate damages;

e.  For reasonable attorney's fees;

f.  For an award of costs; and

g.  For any other relief the Court might deem just, appropriate, or proper.

Respectfully Submitted:

**Robert E. Couhig, Jr. (#4439)**
**Donald C. Massey (#14177)**
**Jonathan P. Lemann (#26380)**
**Jason A. Cavignac (#27990)**
**Blair C. Constant (#33071)**
**R. Tate Martin II (#38045)**

**COUHIG PARTNERS, LLC**
3250 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
(504) 588-1288
(504) 588-9750 *fax*

*Attorneys for Plaintiffs*

**PLEASE SERVE:**

**Bob Dean, Jr.,**
3465 E Lakeshore Dr
Baton Rouge LA 70808

**Uptown Healthcare Center, L.L.C**
through its Registered Agent for Service,
Eric B. Landry,
301 Main Street,
One American Place, 23rd Floor,
Baton Rouge, La 70801

**Park Place Healthcare, LLC**
through its Registered Agent for Service,
Eric B. Landry,
301 Main Street,
One American Place, 23rd Floor,
Baton Rouge, La 70801

**Raceland Manor Nursing Home, Inc.**
through its Registered Agent for Service,
B. Troy Villa,
301 Main Street,
One American Place, 23rd Floor,
Baton Rouge, La 70801

**Maison De′ville Nursing Home, Inc.**
through its Registered Agent for Service,
B. Troy Villa,
301 Main Street,
One American Place, 23rd Floor,
Baton Rouge, La 70801

**River Palms Nursing & Rehab, LLC**
through its Registered Agent for Service,
Eric B. Landry,
301 Main Street,
One American Place, 23rd Floor,
Baton Rouge, La 70801

**Maison De′ville Nursing Home of Harvey, L.L.C.**
through its Registered Agent for Service,
B. Troy Villa,
301 Main Street,
One American Place, 23rd Floor,
Baton Rouge, La 70801

**St. Elizabeth′s Caring, L.L.C.**
through its Registered Agent for Service,
B. Troy Villa,
301 Main Street,
One American Place, 23rd Floor,
Baton Rouge, La 70801

**Bob Dean Enterprises, Inc.**
through its Registered Agent for Service,
B. Troy Villa,
301 Main Street,
One American Place, 23rd Floor,
Baton Rouge, La 70801

**State of Louisiana**
through its Attorney General
300 Capital Drive
Baton Rouge, LA 70802